*Not For Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                :
MARTIN L. MELVIN, pro se,       :
                                :   Civil Action No.:05-771(FLW)
              Plaintiff,        :
                                :         OPINION
      v.                        :
                                :
JASON ASTBURY, et al.,          :
                                :
              Defendants.       :
_____:

**WOLFSON, District Judge:**

In this excessive force case, Defendants Detective Jason Astbury ("Astbury") and Sergeant David Hopkins ("Hopkins")(collectively, "Defendants") move separately to summarily dismiss pro se Plaintiff Martin L. Melvin's ("Plaintiff") Complaint, which asserts constitutional claims pursuant to § 1983 and state law claims. Plaintiff opposes the motion and cross-moves for summary judgment; in addition, Plaintiff moves to compel Defendants to produce certain photographs and medical records. For the reasons that follow, Defendant Astbury's motion is **GRANTED** in part and **DENIED** in part; Plaintiff's claim for denial of medical treatment and state law claims are dismissed, however, his claim for excessive force shall be permitted to proceed to trial. Defendant Hopkins' motion is **GRANTED** in its entirety. Plaintiff's Motion to Compel and Cross-Motion for Summary Judgment are **DENIED**.

## PROCEDURAL HISTORY AND BACKGROUND

To briefly summarize the procedural history, Plaintiff, a prisoner currently residing in East Jersey State Prison, filed the instant suit on February 9, 2005, based on the events that allegedly transpired during his arrest. In July 2006, the case was dismissed for Plaintiff's failure to prosecute. However, this Court reopened the case in March 2007, after Plaintiff petitioned the Court. Then, in August 2007, Defendants filed the instant motions for summary judgment to dismiss the claims. Again, due to Plaintiff's failure to timely oppose the motions and other discovery issues, the motions were held to give Plaintiff the opportunity to respond; the Court now renders Its Opinion.

In the late evening of November 24, 2004, Astbury and his partner were driving a Trenton Police Department ("TPD") vehicle from Hart Avenue in Trenton to police headquarters. Defendant Astbury's Statement of Material facts ("Astbury's Statement") at ¶ 1.[1] When Astbury approached North Clinton Avenue, he noticed a car driving recklessly, and the car matched the description of an automobile reported stolen earlier that day. Id. at ¶ 2. Defendant then attempted to apprehend the driver by activating the siren and emergency lights, and a car chase ensued when Plaintiff failed to stop after

---

[1] In his Opposition or Cross-Motion, Plaintiff does not offer a statement of material facts. Instead, Plaintiff adamantly accuses Defendants of concealing certain photographs taken at the time of his arrest. In that regard, the Court has only Defendants' version of the statement of facts. However, the Court has also reviewed Plaintiff's deposition testimony, and it appears that Plaintiff disputes the majority of Defendants' proffered facts. Accordingly, the Court shall recount the relevant facts and note where the material facts are disputed.

running through a red light. Id. Other marked TPD vehicles in the area also assisted in this pursuit. Id. at ¶ 3.

From this point, the facts of this case diverge as Plaintiff's version differs drastically from those of Defendants. Plaintiff asserted that he was not aware that he was being chased by the police until he drove onto Breunig Street, when Astbury turned on the siren. Plaintiff's Dep. at p. 53. Rather, Plaintiff was under the impression that he was being chased by an unidentified brown car before turning onto Breunig Street. Id. at pp. 54-55  Upon noticing the siren, Plaintiff testified that he stopped the car in the middle of the street, exited the car, and put up his hands and dropped down to his knees. Id. at pp. 53, 101. Then, Plaintiff claimed that he remembered being kicked repeatedly in the face by Astbury. Id. at pp. 57, 59, 63, 102-103. After his arrest, Plaintiff was brought to the Trenton police station. Plaintiff claims that he has no recollection of being treated for injuries suffered as a result of his arrest because he "blacked out" from being attacked by the officers. Id. at p. 105. Plaintiff further claims that when he was transferred to the Mercer County Corrections Center, Defendant Hopkem denied him medical attention. Id. at p. 111.

According to Defendants, once Plaintiff turned onto Breunig Street, he allegedly slammed on the brakes, causing the stolen vehicle to spin out of control and forcefully strike a curb. Astbury's Statement at ¶ 4. In the process, Plaintiff's body allegedly struck the steering wheel of the car. Id. Thereafter, Plaintiff escaped from the accident and began fleeing from the police officers, who were chasing him on foot. Id. at ¶ 6.

Meanwhile, because the stolen vehicle was not placed in park prior to Plaintiff's flight, the vehicle rolled and struck another police vehicle.  Id.  Defendants claim that Plaintiff deliberately disobeyed Astbury's order to stop, and as he was running, Plaintiff lost his footing on wet leaves and fell face-first on concrete.  Id. at ¶ 7.  Defendants then grabbed Plaintiff and ordered to put his hands behind his back, advising him that he was under arrest.  Id. at ¶ 8.  Plaintiff struggled with the officers for several seconds before he was handcuffed.  Id.  Subsequently, Plaintiff was brought to TDP's headquarter and, then, transferred to Mercer County Corrections Center.  Id. at ¶ 12.

Defendants presented medical records that showed that Plaintiff was treated at the Emergency Department for St. Francis Medical Center on November 25, 2004 at 12:51 a.m.  He was treated by Kamal Patel, M.D., for contusions, scrapes and bruises.  Id. at ¶ 14.  In addition, after Plaintiff was transferred to the Mercer County Corrections Center, he was examined by another doctor.  See generally, County of Mercer Admission Data dated November 26, 2004.  Plaintiff was charged with seventeen different criminal charges, including drug possession and distribution, eluding police officers, possession of a stolen automobile and other municipal court charges.  Id. at ¶ 9.

Plaintiff commenced this action alleging that Defendant Astbury used excessive force while arresting him, and that Astbury failed to provide medical care for the injuries he sustained during his arrest.  In addition, Plaintiff alleges that after the arrest, he suffered emotional stress and anxiety.  Plaintiff's only claim against Defendant Hopkins

is the alleged denial of medical care when he was transferred to the Mercer County Corrections Center.

## DISCUSSION

### I. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party. Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). The Court's function "at the summary judgment stage . . . is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Id. at 252.

If the non-movant fails to oppose the motion for summary judgment, Rule 56(e) provides that the Court may only grant the motion for summary judgment "if appropriate." See, e.g., Anchorage Assoc. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d

Cir. 1990); see also Damiano v. Sony Music Entm't, 975 F. Supp. 623, 627 (D.N.J. 1996) (granting summary judgment motion because plaintiffs argument was unopposed, and thus no genuine issue of material fact was created). When "the non-moving party fails to oppose the motion for summary judgment by written objection, memorandum, affidavits and other evidence, the Court will accept as true all material facts set forth by the moving party with appropriate record support." Carp v. Internal Revenue Serv., 2002 U.S. Dist. LEXIS 2921 at *2 (D.N.J. Jan. 28, 2002) (quoting Anchorage Assoc., 922 F.2d at 175). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876 at *8 (E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir.1988)); see also Atkinson v. Cty. of Phila., 2000 U.S. Dist. LEXIS 8500, 2000 WL 793193 at *5 n. 8 (E.D. Pa. Jun. 20, 2000).

**II.  Qualified Immunity and Excessive Force**

The Third Circuit has explained the legal framework for evaluating claims of qualified immunity:

> When an officer's actions give rise to a ' 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them from undue inference with their duties and from potentially disabling threats of liability. The privilege of qualified immunity, however, can be

>overcome when state officials violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Wright v. City of Phildelphia, 409 F.3d 595, 599-600 (3d Cir. 2005) (citations omitted).

The Supreme Court has recently re-confirmed the analytical framework for determining when the privilege of qualified immunity has been overcome:

>In resolving questions of qualified immunity, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, the court finds a violation of a constitutional right, "the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case." Id. Although this ordering contradicts "[o]ur policy of avoiding unnecessary adjudication of constitutional issues," United States v. Treasury Employees, 513 U.S. 454, 478 (1995) (citing Ashwander v. TVA, 297 U.S. 288, 346-347 (1936) (Brandeis, J., concurring)), we have said that such a departure from practice is "necessary to set forth principles which will become the basis for a [future] holding that a right is clearly established." Saucier, supra, at 201.

Scott v. Harris, 127 S. Ct. 1769, 1774 (2007).

The second step requires further elaboration. To be clearly established for purposes of the qualified immunity analysis, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right. Hughes v. Shestakov, Docket No. 00-6054, 2002 WL 1742666 *4 (E.D. Pa. Jul. 22, 2002) (citing Karnes v. Skrutski, 62 F.3d 485, 492 (3d Cir. 1995)). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Saucier, 533 U.S. at 202 (citation omitted). The analysis of whether a right

was a clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition.  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007) (quoting Saucier, 533 U.S. at 201).

Thus, qualified immunity gives officers or officials room to make reasonable mistakes about the legality of their actions:

> The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officers mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

Saucier, 533 U.S. at 205.  In other words, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. Id. at 202 (citation omitted). Finally, because Defendant Astbury moves for summary judgment and the Court is "reviewing a claim of qualified immunity, we view the factual allegations in the light most favorable to [Plaintiff], the party claiming injury." Wright, 409 F.3d at 597 n.1 (citation omitted).

Because Plaintiff's claim is for excessive force, the Court must first evaluate his claim under the Fourth Amendment standard of objective reasonableness, without regard to underlying motivation. See Graham v. Connor, 490 U.S. 386, 395-97 (1989). This requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396 (citation omitted). "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

In evaluating excessive force claims, courts must adopt an officer's "on the scene" perspective:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments- in circumstances that are tense, uncertain, and rapidly evolving- about the amount of force that is necessary in a particular situation.

Graham, 490 U.S. at 396-97 (citations omitted).

Finally, "[t]he reasonableness of the use of force is normally an issue for the jury." Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004). "[A] police officer who is accused of having used excessive force is not 'precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff,' but that 'contention . . . must be considered at trial.'" Id. at 199 (emphasis in original and citation omitted). Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's

use of force was objectively reasonable under the circumstances." Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004) (citations omitted).

Defendant Astbury argues that he did not violate any clearly-established statutory or constitutional right because Plaintiff resisted arrest, and only a minimal degree of reasonable force was used to effectuate his arrest. In particular, Astbury asserts that Plaintiff disobeyed his instructions to stop and continued to run until he fell face-first on concrete after slipping on wet leaves. Astbury further asserts that because Plaintiff struggled while being apprehended, some degree of force was used to effectuate his arrest. Astbury maintains that he acted, at all times during the arrest, reasonable under the circumstances. The officers' statements and official reports support the fact that Plaintiff's injury resulted from a fall. Plaintiff's Opposition fails to address any of Defendants' legal contentions; instead, Plaintiff asserts his own version of the facts, although without evidentiary support. However, the Court has sorted through the exhibits and affidavits submitted by Astbury and will consider Plaintiff's deposition testimony, which was also supplied by Defendants. The Court has undertaken this review and culled through the record, partially in deference to Plaintiff's pro se status. Plaintiff asserts that he obeyed the officers' instructions, but was, nonetheless, physically attacked by the officers.[2] It is undisputed that Plaintiff suffered injuries, that is contusions, scrapes, and

---

[2] The Court notes that during his deposition, Plaintiff identified Astbury as the officer who kicked him because Plaintiff saw Astbury standing over him as he was being kicked. See Plaintiff Dep. at p.103. However, Plaintiff testified, during his trial for his municipal criminal charges, that he did not know which officers on the scene kicked him. See Trial Transcript at pp. 169-170.

bruises. See Patient Discharge Instructions dated November 25, 2004. In response, Astbury argues that because Plaintiff cannot recall which officer caused him to "black out" after his arrest and because Plaintiff had been smoking marijuana in the 24 hours prior to his arrest, which could have caused the "black out," there are no facts indicating that Astbury violated his constitutional rights. Construing all facts and inferences in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff's injuries were the result of physical force from Astbury. Moreover, whether Astbury was the officer that used the force is also a fact question which Plaintiff would have to prove at trial.

Defendant Astbury further argues, albeit erroneously, that because Plaintiff was high on marijuana and evaded arrest, any force that he used was reasonable. See Defendant Astbury's Brief in Support of Motion for Summary Judgment at p. 15. This argument has no merit as the law places restrictions on the degree of force a police offcier may use to effectuate an arrest. Thus, the Court's analysis focuses on the reasonableness of the force exerted when determining whether Astbury is entitled to qualified immunity. Clearly, if Astbury attacked Plaintiff by repeatedly kicking him in the face, the force used in that instance would be unreasonable, particularly since, there is no indication that Plaintiff was carrying a dangerous weapon, or that Plaintiff threatened the officers with physical force. Furthermore, Plaintiff testified that he was on his knees when one of the officers began kicking him. Since the Court must accept Plaintiff's version of the facts on this motion, there is no justification, under these circumstances, for Astbury to have used

physical force, i.e., kicking Plaintiff, to effectuate Plaintiff's arrest. See Evans v. City of Etowah, No. 06-252, 2008 U.S. Dist. LEXIS 27275, at *21-22 (E.D. Tenn. Apr. 3, 2008)(the court found the plaintiff's allegations of gratuitous kicking from the officers sufficient to defeat summary judgment, because a reasonable juror could credit Plaintiff's testimony and find the officers' conduct intentional).

Accordingly, under these circumstances, Astbury cannot be shielded by qualified immunity. The right to be free from excessive force during arrest is a clearly established constitutional right. Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006). As discussed, supra, Astbury's conduct, as alleged, would violate Plaintiff's Fourth Amendment right. Next in the qualified immunity analysis, the contours of the right of Plaintiff must be sufficiently clear such that Astbury would understand that what he was doing violates that right. In Plaintiff's version of events, the force (i.e., kicking Plaintiff in the face) used by Astbury is presumably gratuitous and unjustified by any resistance on Plaintiff's part. If a jury believes Plaintiff, then no reasonable officer could have believed that he was authorized to use such force under those circumstances. Accordingly, Astbury is not entitled to qualified immunity.[3]  See Evans, 2008 U.S. Dist. LEXIS 27275 at *26-27

---

[3] To support the fact that he only used minimal force to effectuate Plaintiff's arrest and that Plaintiff fell because of slipping on wet leaves, Asbury relies primarily on his statements and reports. See Wilson Decl., Exh. C at 34; ¶ 8, Exh. F at 60:7 to 10; ¶ 12, Exh. J at P-1. However, without any other evidence the Court cannot credit Astbury's version of the facts on this motion. Such other evidence may include affidavits from Plaintiff's treating doctors, or any other medical evidence that has not been submitted to the Court, to explain the likely cause of Plaintiff's injuries. In addition, there may be additional evidence to corroborate Astbury's testimony as to what transpired during Plaintiff's arrest (for example, documentation evidencing the alleged damages to the stolen vehicle operated by Plaintiff and/or the police patrol car; additional photographs that show the extent of

(defendant officers were not entitled to qualified immunity because if jury believed that the officers kicked the plaintiff intentionally, "no reasonable police officer would have believed himself authorized to use force under those circumstances"). Thus, summary judgment is denied with respect to Plaintiff's excessive force claim.

### III.  Failure to Provide Medical Care

Plaintiff alleges, in two separate instances, that he was denied medical treatment for the injuries he sustained during his arrest. Specifically, Plaintiff alleges that, first, Astbury failed to take him to a doctor for treatment after he was arrested. Then, when he was transferred to the Mercer County Corrections Center, Defendant Hopkins further denied him medical attention. Since Plaintiff was a pretrial detainee, the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, governs Plaintiff's claims for inadequate medical care. See Sylvester v. City of Newark, 120 Fed. Appx. 419, 423 (3d Cir. 2005). The Third Circuit has held that Due Process rights under the Fourteenth Amendment provide at least as much protection as Eighth Amendment protections for convicted prisoners. See Id.; see also Kost v. Kozakiewicz, 1 F.3d 176, 188 (3d Cir. 1993). Thus, the deliberate indifference standard would also apply to pretrial detainees through the Fourteenth Amendment. See Natale v. Camden County Corr. Facility, 318 F.3d 575, 581-82 (3d Cir. 2003); see also Hubbard v. Taylor, 399 F.3d 150,

---

Plaintiff's injuries; and affidavits from other witnesses). If such other evidence shows that Plaintiff's injuries were caused by a fall, and thus, minimal force was used during the arrest, and if Plaintiff is unable to counter that evidence then Astbury may be entitled to qualified immunity. As such, the Court shall give defendant Astbury an additional 45 days to submit such evidence, should it be available, along with a renewed motion for summary judgment.

166 (3d Cir. 2005)("the due process rights of a [pretrial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner . . .").

The Eighth Amendment provides a constitutional basis for a § 1983 claim for alleging inadequate medical care. See Natale, 318 F.3d at 580-81. However, "[f]ailure to provide medical care to a person in custody can rise to the level of a constitutional violation [of the Eighth Amendment] under § 1983 only if that failure rises to the level of deliberate indifference to that person's serious medical needs." Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). Deliberate indifference refers to "a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994). The "deliberate indifference" standard is essentially a two-pronged test, requiring: (1) that the prisoner's medical needs be serious; and (2) that there be deliberate indifference on the part of the defendants. See Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

In this case, evidence presented by both Astbury and Hopkins proves that Plaintiff was provided with medical attention.[4]  Although Plaintiff claims that he has no recollection of being taken to St. Francis Hospital after he was arrested, the evidence is clear, that Plaintiff was treated by Dr. Kamal Patel on November 25, 2004 at 12:51 a.m.,

---

[4] It appears that the only claim against Defendant Hopkins is the denial of medical treatment. In fact, Plaintiff admits during his deposition that Hopkins was not involved during his arrest, see Plaintiff's Dep. at p. 111, and that the allegations of mental stress and anxiety, which were the basis of Plaintiff's state law claims, were not directed at Hopkins. See Id. at p. 112.

on the night of his arrest. See Patient Discharge Instructions dated November 25, 2004. Plaintiff fails to present evidence to demonstrate otherwise, except his own statements that he believes he was not taken to the hospital. The only argument that Plaintiff advances is that he was not provided with the medical report during discovery, which is denied by Astbury.[5] Whether Plaintiff received the medical report during discovery is irrelevant for the Court's determination on this issue, because the Court finds that Defendant Astbury has presented sufficient medical evidence to support his position. Therefore, the Court need not credit Plaintiff's unsupported assertions. As such, Astbury's motion is granted on this claim.[6]

Similarly, the record shows that the same day on which Plaintiff was transferred to the Mercer County Corrections Center on November 26, 2004, he was seen by Dr. Hamid, the doctor at the corrections center. See County of Mercer Admission Data dated November 26, 2004 at p. 1. Specifically, Dr. Hamid assessed Plaintiff's physical condition and administered Tylenol for discomfort. See Id. at pp. 2-3. Again, Plaintiff's own bare assertions cannot defeat summary judgment. Accordingly, Defendant Hopkins' motion is granted.

---

[5] The Court will address Plaintiff's motion to compel later in this Opinion.

[6] During his deposition, Plaintiff admitted that he could have been taken to St. Frances Medical Center after his arrest. See Plaintiff's Dep. at p. 172.

### IV. State Law Claims

Plaintiff's remaining claims are state law claims against Astbury for mental stress, false accusation and anxiety. To the extent Plaintiff has alleged legally cognizable claims, Plaintiff has failed to follow the procedures for providing notice to the municipality as required by New Jersey's Tort Claims Act. N.J.S.A. 59:8-3 provides that "[n]o action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter." If the public entity has adopted its own form, then that form must be completed. N.J.S.A. 59:8-6. A potential claimant must file notice with the public entity "not later than the ninetieth day after accrual of the cause of action." N.J.S.A. 59:8-8. Further, "the claimant shall be forever barred from recovering against a public entity or public employee" if he or she fails to meet this deadline. Id.; see Yancoskie v. Delaware River Port Authority, 155 N.J. Super. 1, 4 (App. Div. 1977); Hammond v. City of Paterson, 145 N.J. Super. 452 (App. Div. 1976).

Here, contrary to Plaintiff's assertion, he has failed to file the necessary tort claim notice with the City of Trenton regarding his arrest on November 24, 2004. Other than Plaintiff's own assertion that he did file a tort claim notice, he has not furnished the Court with any documentation to support his claim. However, Astbury relies upon the Certification of Edwards-Carter, the Acting Deputy City Clerk, which states that she reviewed the notices of tort claim submitted to the City Clerk's office for filing, and that the Clerk's office did not receive any claim notice from Plaintiff regarding the incident

that occurred on November 24, 2006.  See Edwards-Carter's Cert. at p. 1.  Accordingly, Plaintiff's state law claims are dismissed.

### V. Plaintiff's Cross-Motion for Summary Judgment

As a preliminary matter, Plaintiff's Cross-Motion for Summary Judgment was improperly filed since he failed to comply with Federal Rules of Civil Procedure and Local Civil Rules.  Specifically, Plaintiff's Cross-Motion did not include a notice of motion and a statement of material facts.  See Fed. R. Civ. P. 7; L Civ. R. 7.1(h); L. Civ. R. 56.1.  On that basis alone, the Court can deny Plaintiff's cross-motion.  However, substantively, Plaintiff's Cross-Motion is denied for the reasons stated above.

### VI.    Motion to Compel

Plaintiff devotes the majority of his Opposition and Cross-Motion addressing a discovery issue.  Plaintiff asserts that Defendant has repeatedly and intentionally ignored his requests to produce certain photographs taken of him on the date of his arrest and the medical reports Defendants relied upon in their motions for summary judgment (i.e., Patient Discharge Instructions dated November 25, 2004 and County of Mercer Admission Data dated November 26, 2004).  On the other hand, Defendants vehemently maintain that they have forwarded all medical reports to Plaintiff, and that they have expended great efforts to secure the alleged photographs, but to no avail because no such pictures exist.

Indeed, this issue has been contentiously litigated by both parties.  The Honorable Tonianne J. Bongiovanni, U.S.M.J., entered an Order dated July 26, 2007, in which she

stressed that Defendants shall take all the necessary steps to procure the alleged photographs requested by Plaintiff.  Particularly, Plaintiff claims that his photographs were taken at the Mercer County Jail by police officers bearing the last name Bear, James or Oliver.  On August 7, 2007, defense counsel for Astbury, submitted a Letter to Magistrate Judge Bongiovanni stating that there is no Internal Affairs file regarding Plaintiff, where copies of alleged pictures could be retained.  See Letter dated August 7, 2007.  In addition, the Letter stated that defense counsel attempted to retrieve the alleged pictures from the Mercer County Prosecutor's Officer, however, no such pictures exist.

Plaintiff, now, once again raises this issue, claiming that these photographs exist, and that he is entitled to them.  The Court finds that this issue has been previously decided by Magistrate Judge Bongiovanni.  Defendants have complied with the Court's Order, and Plaintiff has failed to provide any additional support for his assertion that certain photographs were taken of him.  Importantly, Plaintiff failed to appeal Magistrate Judge's findings on this issue to this Court.  At this juncture, it is futile for the parties and the Court to continue on this fishing expedition.  As such, Plaintiff's motion to compel is denied in this respect.  However, should there be any circumstances that would give rise to new evidence regarding the alleged pictures, Plaintiff can bring such evidence to the attention of Magistrate Judge Bongiovanni.[7]

---

[7] In a Letter correspondence dated May 16, 2008, Plaintiff stated that defense counsel forwarded certain pictures taken of him when he was arrested.  However, Plaintiff continued to accuse Defendants of concealing other pictures taken while he was incarcerated at Mercer County Jail. See Plaintiff's Letter dated May 16, 2008.

With regard to the medical reports, Defendants maintain that copies of the reports were forwarded to Plaintiff pursuant to his request. Plaintiff argues that Defendants' motions must be dismissed because he has not had the opportunity to review the reports. However, this is the first time in this case Plaintiff raises this issue. Nevertheless, even if Plaintiff did not receive the medical documentation before the filing of the motions, he was provided with a copy as a part of the exhibits to Astbury's motion for summary judgment. Plaintiff, then, had the opportunity to examine and respond to the reports in his Opposition, but he did not do so. Absent such arguments, the Court has no basis to believe the medical reports were not authentic. Accordingly, Plaintiff's motion to compel is denied. As a courtesy, Defendants are directed to re-send the copies of the medical reports cited herein to Plaintiff within ten days from the date of the Order accompanying this Opinion.

An appropriate Order shall follow.

Dated:  December 22, 2008                                          /s/ Freda L. Wolfson
                                                                                                                                  Freda L. Wolfson, U.S.D.J.