\***Not For Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
:
MARTIN L. MELVIN, pro se,          :
:                Civil Action No.:05-771(FLW)
            Plaintiff,          :
:                **OPINION**
   v.                              :
:
JASON ASTBURY, et al.,             :
:
            Defendants.        :
_____ :

**WOLFSON, District Judge:**

On December 18, 2008, the Court denied Defendant Detective Jason Astbury's ("Defendant" or "Astbury") motion for summary judgment, however, permitted Astbury to renew his motion with respect to Plaintiff Martin L. Melvin's ("Plaintiff") excessive force claim pursuant to § 1983, the only claim remaining in the Complaint. In that respect, the Court allowed Defendant to produce evidence showing that he used reasonable force to effectuate Plaintiff's arrest. Before the Court is Defendant's renewed motion for summary judgment on that issue. For the reasons set forth herein, the motion is **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

As the facts of this case have been extensively recounted in the Court's previous Opinion dated December 18, 2008, only relevant facts pertinent to this motion will be discussed. This action arises from Plaintiff's arrest on November 24, 2004 by Astbury. According to Plaintiff, during the course of his arrest, Astbury unreasonably and repeatedly kicked him in the face without provocation. During his deposition, Plaintiff testified that the force from the kicking caused him to "black-out." Plaintiff's Dep. at pp. 57, 59, 63, 102-105.

Defendant repudiates Plaintiff's version of the incident. Defendant asserts that he and his partner pursued Plaintiff in a car in Trenton because Plaintiff was suspected of driving a stolen vehicle. Astbury Cert. at ¶ 5. During the car chase, Plaintiff lost control of the vehicle and the right side of the car hit the curb. Id. at ¶ 6. Upon impact, Defendant witnessed Plaintiff open the vehicle door and begin fleeing on foot; thus, a foot-chase ensued. Id. at ¶ 7. Plaintiff was advised by the officers to stop running, however, he did not comply. As he ran onto a driveway with wet leaves, Plaintiff slipped and fell. Id. Defendant avers that Plaintiff fell face and chest first, with the front of his body falling on the sidewalk. Id. Defendant then proceeded to arrest Plaintiff. During the course of Plaintiff's arrest, Defendant alleges that Plaintiff resisted arrest and that Defendant was able to effectuate arrest only after a five to ten second struggle. Id. at ¶ 8.

Plaintiff commenced this action alleging that Defendant used excessive force while arresting him, and that he failed to provide medical care for the injuries he

sustained during his arrest. The Court dismissed all claims against co-defendant Sergeant David Hopkins and dismissed Plaintiff's claim for failure to provide medical treatment and other state law claims against Astbury. However, in light of the disputed fact, i.e., the cause of Plaintiff's injuries to his face, the Court denied summary judgment on Plaintiff's excessive force claim. In so doing, the Court specifically permitted Defendant to renew his motion for summary judgment on this claim if there was any evidence demonstrating that Defendant used minimal force to effectuate Plaintiff's arrest. In particular, the Court advised Defendant that the newly presented evidence should show conclusively that Plaintiff's injuries were caused by a fall, rather than repeated kicks from the officers.[1]

Defendant filed his renewed summary judgment motion on February 5, 2009, returnable March 2, 2009. Including in his motion, Defendant presents additional medical evidence to demonstrate that Plaintiff's injuries sustained during his arrest were consistent with a fall, rather than excessive force from the alleged assault, i.e, the kicking. To date, Plaintiff has not opposed the motion. On May 13, 2009, at the direction of the Court, Defendant sent another copy of the motion and a letter advising Plaintiff that no opposition has been received by the Court, and requested Plaintiff to communicate his intention to the Court with regard to the motion. Plaintiff did not respond to the letter. Consequently, on June 16, 2009, the Court sent Plaintiff correspondence informing him that the Court will consider Defendant's renewed motion for summary judgment as

---

[1] Plaintiff stated that he could not identify whether Defendant or his partner engaged in the alleged kicking.

unopposed. Not surprisingly, as noted in the Court's previous Opinion, this type of behavior is consistent with Plaintiff's history of dilatoriness in this case. Having provided Plaintiff with ample opportunity time after time to prosecute his case, the Court will render its decision on this motion without opposition from Plaintiff.

## DISCUSSION

### I. Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56©. For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Kaucher, 455 F.3d at 423. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Moreover, the non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Indeed, the plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

Moreover, in deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.

Credibility determinations are the province of the fact finder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## II. Qualified Immunity

In his motion, without substantively addressing the excessive force claim, Defendant invokes qualified immunity to shield himself from the alleged liability. Because in the Court's view, the additional medical evidence proffered by Defendant establishes that Plaintiff's injuries were caused by a fall, rather than assault, the Court will afford Defendant qualified immunity.

As an initial note, the Court will not extensively articulate the qualified immunity framework in this Opinion since this analysis was elucidated in the Court's prior Opinion. However, subsequent to the Court's ruling, the Supreme Court modified the two-step qualified immunity test it set forth in Saucier v. Katz, 533 U.S. 194, 200 (2001). Under Saucier, this Court would first have to determine "whether there is even a wrong to be addressed in an analysis of immunity." "If, and only if, the court finds a violation of a constitutional right, the court moves to the second step of the analysis and asks whether immunity should nevertheless shield the officer from liability." Curley v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007). The second step of the Saucier analysis asks whether a reasonable officer would have known his conduct to be unlawful given the specific circumstances and facts of the case. Saucier, 533 U.S. at 199. In other words, a defendant is not entitled to qualified immunity if, at the time of the incident, the right that was

violated was clearly established. Torisky v. Schweiker, 446 F.3d 438, 443 (3d Cir. 2006) ("This second inquiry 'must be undertaken in light of the specific context of the case'").

However, in Pearson v. Callahan, 129 S. Ct. 808 (2009), a unanimous Court relaxed the rigid two-step application of the Saucier analysis. By noting that in many instances a court need not reach whether a constitutional violation is alleged to determine if qualified immunity is appropriate,[2] the Court opined that the first prong "sometimes results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case. There are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Id. at 818. In addition, "[a]lthough the first prong of the Saucier procedure is intended to further the development of constitutional precedent," the first prong "create[s] a risk of bad decisionmaking," specifically in those instances where a court decides a rather nuanced constitutional claim early on in litigation where the factual basis for the claims have not been fully developed through discovery. Id. at 820. Thus, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

---

[2] The Court also noted that in these cases, where it is evident that there was no violation of clearly established law, a lower court may not give proper consideration to the more crucial question of whether a constitutional violation is alleged, creating a risk of "'uttering pronouncements that play no rule in their adjudication.'" Pearson, 2009 WL 128768 at *11 (quoting Horne v. Coughlin, 191 F.3d 244, 247 (2d Cir. 1999)).

Pursuant to Pearson, the Court's analysis begins with the second step of qualified immunity - whether Defendant would have reasonably known that his conduct is unlawful given the specific circumstances and facts of the case.[3] Importantly, to determine if the officer knew his conduct was reasonable when effectuating an arrest, the Court must look through the lens of the officer in accordance with the surrounding facts of the case. Graham v. M.S. Connor, 490 U.S. 386, 396 (1989). To that end, it is axiomatic that some degree of physical force or threat is necessary to carry out an arrest. Id.; Curley, 499 F.3d at 207. In other words, qualified immunity allows officers room to make reasonable mistakes about the legality of their actions. See Saucier, 533 U.S. at 205.

Bearing those concepts in mind, the Court finds Defendant's actions were reasonable based on the circumstances and therefore, qualified immunity attaches. Defendant testified that Plaintiff actively evaded arrest and that he had to use some physical force with his hands in order to subdue and arrest Plaintiff. See Astbury Cert. at ¶¶ 6-7. In doing so, Defendant testified that he grabbed Plaintiff's hands after Plaintiff fell to the ground in the midst of eluding the officers. Id. at ¶¶ 7, 10; see also Use of Force Form dated November 24, 2004. Besides the minimal force used to effectuate

---

[3] As held in the Court's Opinion dated December 18, 2008, Plaintiff has sufficiently stated in his § 1983 claim that an alleged constitutional wrong was committed against him. Specifically, the Court found that Plaintiff's Fourth Amendment right to be free from excessive force during arrest is a clearly established constitutional right. Melvin v. Astbury, No. 05-771, 2008 U.S. Dist. LEXIS 105145, at *17 (D.N.J. Dec. 18, 2008); see Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006).

arrest, Defendant disputes that he or any other officers on the scene kicked or otherwise assaulted Plaintiff.  On the other hand, as noted above, Plaintiff vehemently rejects Defendant's version of the facts.  Without evidentiary support, Plaintiff asserts that upon exiting the vehicle, he dropped down to his knees.  His only point of contention is that he was repeatedly kicked in the face by Defendant and sustained major injuries (i.e., fractures).  However, the evidence presented in the current motion belies Plaintiff's unsupported testimony and allegations.

After his arrest, Plaintiff was treated at the Emergency Department for St. Francis Medical Center on November 25, 2005 at 12:51 a.m.  He was treated by Kamal Patel, M.D., for contusions, scrapes and bruises.  Plaintiff was further treated by another doctor at the Mercer County Corrections Center and was given Tylenol for discomfort. Specifically, Defendant offers the Court additional medical evidence relating to his treatment at the Emergency Room in St. Francis hospital.  The Court discerns the following from the medical report: (1) there was "no evidence trauma to the head;" (2) Plaintiff was alert; (3) Plaintiff's face was the only location experiencing mild discomfort due to lacerations; (3) no dental injury; (4) no broken bones; (5) mild contusions, scrapes and abrasions; and (6) no medicine was administered.  See generally, Emergency Triage Document dated November 25, 2004.  In addition, the nurse's notes indicated that the medical personnel explained Plaintiff's conditions to Plaintiff and he "verbalized understanding."  See Id. at p. 4.  Ultimately, Plaintiff was treated for contusions, scrapes

and abrasions, but the hospital did not administer any medicine for his injuries except for an ice pack.  Id. at pp. 2, 5.

In light of the newly presented evidence, the Court finds that Plaintiff's allegations of assault by Defendant are inconsistent with the nature of his injuries in connection with his arrest.  The inconsistencies are glaring.  Simply put, no reasonable jury would find that Plaintiff's mild injuries sustained during the arrest were the result of repeated kicks to his face.  Compellingly, Plaintiff testified that he "blacked-out" due to the trauma.  Under these circumstances, a reasonable jury would not find minor scrapes and abrasions consistent with an injury that would cause Plaintiff to "black-out."  Rather, the evidence unequivocally shows that Plaintiff was capable of walking, understanding, awake and alert at the time he was admitted into the ER, which was less than a couple of hours after the arrest.  See Id. In fact, the medical report does report any fractures.  Indeed, the ER report includes statements that the "patient (Plaintiff) states . . . police chased him and he jumped from the car and injured the face" and that Plaintiff was a "burglar who sole a car and was chased by police and sustained lacerations."  Id. at pp. 1, 3.  The ER report notes no mention by Plaintiff of being kicked by any officers.  These statements support Defendant's testimony that Plaintiff's injuries resulted from a fall.

Accordingly, absent any showing of police assault, Defendant, from his perspective, would not have reasonably believed that his conduct violated Plaintiff's Fourth Amendment constitutional rights.  Indeed, Plaintiff, who has submitted no opposition to this motion, has failed to show a genuine issue of material fact that

Defendant applied any unreasonable force in effectuating his arrest. Therefore, qualified immunity attaches and summary judgment is granted in favor of Defendant; Plaintiff's excessive force claim is dismissed.

Dated: June 19, 2009                                          /s/ Freda L. Wolfson
                                                              Freda L. Wolfson, U.S.D.J.